IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| OLYMPIC STEAKHOUSE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-02191-JDB-jay |
| | ) | |
| WESTERN WORLD | ) | |
| INSURANCE GROUP, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER IMPOSING SANCTIONS FOR MISLEADING THE COURT

Before the Court is the response of Plaintiff, Olympic Steakhouse ("Olympic"), and its counsel, Drayton Berkley (Docket Entry ("D.E.") 31), to an order to show cause (D.E. 29). For the following reasons, Plaintiff's counsel is SANCTIONED. This matter is referred to Disciplinary Counsel for the Board of Professional Responsibility of the Supreme Court of Tennessee ("BPR").

**PROCEDURAL HISTORY**

Olympic initiated this action against Defendant, Western World Insurance Group ("Western World") in the Chancery Court for the Twenty-Sixth Judicial District of Tennessee at Alamo on February 23, 2023. (D.E. 1-1 at PageID 13.) Defendant timely removed the case to this Court on April 3. (D.E. 1.) Among other claims, Plaintiff alleged Western World, acting as an insurer, violated the Fraudulent Insurance Act, which is codified at Tennessee Code Annotated § 56-53-103(a)(1).[1] (D.E. 1-1 at PageID 19–23.) Defendant moved for partial dismissal of the complaint, including the Unlawful Insurance Act ("Act") claim, on May 24. (D.E. 15.) In its

---

[1] This statute is correctly titled the Unlawful Insurance Act. *See* Tenn. Code Ann. § 56-53-103.

motion, Western World contended that the Act, by its plain language, did not apply to insurers. (D.E. 15-1 at PageID 110–12.) Olympic filed an untimely response on September 11. (D.E. 25.) Plaintiff's response purported to quote directly from the Act as follows:

> Tenn. Code Ann. § 56-53-103 provides in relevant part that:
>
>> Any person who commits, participates in, or aids, abets, or conspires to commit, or solicits another person to commit, or permits its employees or its agents to commit any of the following acts with an intent to induce reliance, has committed an unlawful insurance act:
>>
>> a.  Presents, causes to be presented, or prepares with knowledge or belief that it will be presented, ….. …… …… an insurance professional …….. in connection with an insurance transaction …… any information that the person knows to contain false representations, or representations the falsity of which the person has recklessly disregarded, as to any material fact, or that withholds or conceals a material fact, concerning any of the following:
>>
>> …..
>>
>>> i.   ……..
>>>
>>> ii.  A claim for payment or benefit pursuant to any insurance policy;
>>>
>>> iii. Payments made in accordance with the terms of any insurance policy; or
>>
>> ………
>
> 2.  It shall be unlawful for any person to commit, or to attempt to commit, or aid, assist, abet or solicit another to commit, or to conspire to commit an unlawful insurance act.

(D.E. 25 at PageID 137–38.) However, this recitation is misleading. With the omitted portions emphasized in bold typeface, § 103(a)(1) actually says:

> (a) Any person who commits, participates in, or aids, abets, or conspires to commit, or solicits another person to commit, or permits its employees or its agents to commit any of the following acts with an intent to induce reliance, has committed an unlawful insurance act:

2

> (1) Presents, causes to be presented, or prepares with knowledge or belief that it will be presented, **by or on behalf of an insured, claimant or applicant to** an **insurer,** insurance professional **or a premium finance company** in connection with an insurance transaction **or premium finance transaction,** any information that the person knows to contain false representations, or representations the falsity of which the person has recklessly disregarded, as to any material fact, or that withholds or conceals a material fact, concerning any of the following:
>
> > **(A) The application for, rating of, or renewal of, any insurance policy;**
> > (B) A claim for payment or benefit pursuant to any insurance policy;
> > (C) Payments made in accordance with the terms of any insurance policy; or
> > **(D) The application for the financing of any insurance premium;**

Tenn. Code Ann. § 56-53-103(a)(1) (emphasis added). Acknowledging these discrepancies, the undersigned ordered Olympic and Berkley to show cause why they should not be sanctioned for misleading the Court. (D.E. 29 at PageID 158–59.) Berkley responded on October 3. (D.E. 31.)

Notably, while engaging in the briefing in this case, Berkley was also subject to a show cause order issued on August 10, 2023, by District Judge S. Thomas Anderson for allegedly misleading the Court based on the same statute. *See Anderson Eye Care of W. Tenn. v. Auto-Owners Ins. Co.*, No. 1:23-cv-01092-STA-jay (W.D. Tenn. Aug. 10, 2023), D.E. 17. After a hearing, Judge Anderson found:

> In this case, Attorney Berkley, on behalf of Plaintiff, clearly made a misrepresentation to the Court as to the language of the statute and that misrepresentation was material to the issue before the Court, *i.e.*, whether [Defendant] was fraudulently joined as a defendant. Attorney Berkley made no effort to correct his alteration of the statute, even when Defendant brought it to his attention and labeled it as a "misrepresentation."

*Anderson Eye Care of W. Tenn. v. Auto-Owners Ins. Co.*, No. 1:23-cv-01092-STA-jay, 2023 WL 6612519, at *3 (W.D. Tenn. Oct. 10, 2023). Judge Anderson consequently held that Berkley had failed to show good cause and "strongly caution[ed]" Berkley against making further misrepresentations. *Id.*

**STANDARD FOR IMPOSING SANCTIONS**

I.  Federal Rules of Civil Procedure

Federal Rule of Civil Procedure 11(c) authorizes courts to impose sanctions upon a determination that a party or counsel has submitted a pleading containing "claims, defenses, and other legal contentions [not] warranted by existing law or . . . a []frivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]"  Fed. R. Civ. P. 11(b)(2). Before penalizing a litigant *sua sponte*, a court must provide a chance for the offending party to show cause why they should not be sanctioned.  Fed. R. Civ. P. 11(c)(3).  A court should adapt sanctions "to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).  Penalties include "nonmonetary directives" or "an order to pay a penalty into court."  *Id.*  One permissible sanction is to refer offending counsel for disciplinary action.  *See, e.g.*, *King v. Whitmer*, 71 F.4th 511, 533 (6th Cir. 2023).

II.  Rules of Professional Conduct

This Court has adopted "the Rules of Professional Conduct as . . . currently promulgated and amended by the Supreme Court of Tennessee" for all attorneys practicing before the Court. LR 83.4(g).  If an attorney has willfully violated any Rule of Professional Conduct, the Court may impose appropriate discipline.  LR 83.4(g)(1).  The process for doing so is outlined in a 1980 administrative order.  *See id.*; Ord. Adopting Rules of Disciplinary Enf't, No. 80-1 (W.D. Tenn. Sep. 29, 1980) [hereinafter "AO 80-1"].  Under those procedures, if a judge concludes that an attorney has engaged in misconduct, "the Judge shall refer the matter to counsel for investigation and the prosecution of a formal disciplinary proceeding . . . ."  AO 80-1 at 4.  Counsel for such a referral is the "Disciplinary Board of the Supreme Court of Tennessee."  *Id.* at 7.  Tennessee Rule

of Professional Conduct 3.3(a)(1) provides that "[a] lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal . . . ." Tenn. Sup. Ct. R. 8, RPC 3.3(a)(1).

## ANALYSIS

Berkley advances three arguments for why he should not be sanctioned.  First, he points to a footnote in his response to Defendant's motion in which he referenced a filing in a different case that attached the entire statute's actual text. (D.E. 31 at PageID 161.)  Second, Plaintiff's counsel contends that the omissions were "grammatical ellipses . . . authorized by the [United States] Supreme Court since 1870" in which "part of a clause is left out and a reader is able to supply the remaining words." (*Id.*)  Third, any representation about the law was not knowingly false because he supplied the omitted words by reference to a filing in another case. (*Id.* at PageID 162.)

Berkley's first and third arguments rely on a footnote in his response stating, "[t]he entire text of this section is filed in 1:23-cv-01092-STA-jay at DE 19-1." (D.E. 25 at PageID 137.)  Berkley inserted this footnote before misquoting the statute. (*Id.*)  Rather than demonstrating good cause for his omissions, this reference only indicates that Berkley's misrepresentations were knowing and willful.  Plaintiff's counsel, for over a month prior to filing the instant response, was subject to a show cause order before Judge Anderson for the same recitation of the Unlawful Insurance Act.  *Anderson Eye Care*, No. 1:23-cv-01092-STA-jay (W.D. Tenn. Aug. 10, 2023), D.E. 17.  Instead of providing the language of the entire statute in the body of the response in this case, attaching it to this response, or attempting to rectify in any way the omissions that precipitated Judge Anderson's show cause order, Berkley recited the same deficient statutory language and merely provided a reference to his attachment of the statute in a different case. (D.E. 25 at PageID 137–38.)  This establishes that counsel knew the statutory language he was citing was misleading and lacking.

Likewise, Berkley's reliance on the Supreme Court's recognition of the role of grammatical ellipses in *United States v. Howell* is unpersuasive. (D.E. 31 at PageID 161) (citing *Howell*, 78 U.S. 432, 436 (1870)). Judge Anderson recently held, in one of Berkley's other cases pending in this Court that "[a]lthough the use of ellipses may be appropriate in certain contexts, the caveat to *Howell*'s approval of the use of ellipses is countenanced on 'good usage.' In the present case, Plaintiff used ellipses to change the meaning of the statute which amounts to a misrepresentation to the Court." *Anderson Eye Care*, 2023 WL 6612519, at *3 (internal citation omitted). The same reasoning applies here. Berkley's use of ellipses was not to exclude irrelevant material or any other "good usage." Instead, he materially rewrote the statute in his client's favor.

Therefore, Berkley has failed to show good cause for misrepresenting the law to the Court. The undersigned also finds that Berkley's statutory recitation was knowing and willful based on the prior show cause order issued by Judge Anderson. Despite that knowledge, Berkley presented the same quoted material to the undersigned. Doing so was willful misconduct. Berkley signed and filed a pleading that was not supported by existing law or a nonfrivolous argument to extend or modify the law. *See* Fed. R. Civ. P. 11(b)(2). Likewise, counsel knowingly presented a false statement of law to this Court. *See* Tenn. Sup. Ct. R. 8, RPC 3.3(a)(1). Sanctions, consequently, are warranted. *See* Fed. R. Civ. P. 11(c); LR 83.4(g)(1); AO 80-1.

The Court is tasked with carefully tailoring a sanction that will deter this type of conduct in the future. Fed. R. Civ. P. 11(c)(4). While other sanctions such as an order to pay a penalty or dismissal of this action may be appropriate, the undersigned finds that those would not be the best deterrent to this specific misconduct by an attorney. Likewise, given that Berkley was on notice of his misrepresentations because of Judge Anderson's previous show cause order, further warning does not appear likely to remedy the misbehavior. Therefore, to ensure a thorough inquiry into

Berkley's misconduct and to deter this action in the future, Berkley will be referred to the BPR's Disciplinary Counsel.

## CONCLUSION

Accordingly, the Court SANCTIONS Plaintiff's counsel. Based on this Court's finding that Berkeley has willfully violated Federal Rule of Civil Procedure 11(b)(2) and Tennessee Rule of Professional Conduct 3.3(a)(1), Berkley will be referred to the BPR's Disciplinary Counsel. The Clerk is DIRECTED to transmit a copy of this order to the BPR. Finally, Berkley shall notify this Court within fourteen days of any BPR adjudication related to this referral.

IT IS SO ORDERED this 20th day of October 2023.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE